I'm sorry we couldn't accommodate the request for the continuance. We have a death penalty case on the calendar tomorrow, and we just couldn't accommodate you. I'm sorry we couldn't do that, but we did the best we could. So, Ms. Murphy, you want to start off? MS. MURPHY Your Honors, may I please have court? Since I briefed this case, the law on sentencing has changed, as we all know. And I'm going to say a little bit about that. In this case, we have a district judge that really did not want to sentence Mr. Jamar to 20 years and made it very, very clear that he did not want to at several points. He asked the government twice if the government would set aside the prior conviction, and he said that he was sympathetic to defense counsel's argument that 20 years was unreasonable, but that he was powerless. In light of Ameline, then, isn't the easiest resolution, at least on the sentencing issue, to simply grant you a limited remand under Ameline and let the district court reconsider the sentence, if it wishes? MS. MURPHY Yeah, that would certainly be a possibility, Your Honor. It does appear to me, though, that the limited remand was for cases where it was not clear whether the judge would have sentenced differently if the guidelines were advisory. In this case, it's very clear that the judge would have sentenced differently. THE COURT Who is it clear to? The judge didn't say it. He implied it. He indicated it. MS. MURPHY Right. THE COURT And he decided, here we go. MS. MURPHY I guess we're in a situation where it wouldn't hurt. But I would say that the judge did ask the government twice, again, to reconsider the prior and did say, I'm powerless. I want to give you less time. THE COURT But if we grant you the Ameline remand, don't you get there? I mean, if that's the case, then Judge Teresian or whoever it is who's going to resentence is going to say, great, you know, bring them on back and let's reconsider the sentence. MS. MURPHY That would seem like a good solution. THE COURT Okay. MS. MURPHY And I've prepared arguments on the wiretap and other. THE COURT Why don't you go ahead on that? MS. MURPHY I can go ahead on those. THE COURT Unless you want to say something more on the sentencing. MS. MURPHY I think sentencing is, I'm in agreement with the Court, and it seems to be quite sensible. I'm going to start with Mr. Jomar's competence to stand trial. I was concerned because in the government's briefing, there was no acknowledgement that the psychiatrist who examined Mr. Jomar had expressed concern about Mr. Jomar's mental state and how it would perhaps affect him in the legal proceedings. And that's something I wanted to bring to the Court's attention on that subject. THE COURT Well, the district court did order a hearing, and the evaluation resulted in a finding that he was competent. So is the concern that they didn't look backwards to try and determine whether he'd been competent during the trial? Is that your point? MS. MURPHY A couple of points. Actually, Dr. Trader did not say whether he was competent or not competent. That was the judge's own conclusion. THE COURT All right. Well, the district court did order a competency. I mean, usually the problem we have is the issue is raised and the district court didn't do anything about it. Here, he did order an evaluation and then made an express finding that the defendant was, in fact, competent, correct? MS. MURPHY Right. THE COURT Okay. So to overturn that, we'd have to find that finding clearly erroneous? MS. MURPHY Well, I'm not challenging it as to the sentencing. I'm challenging it as to the trial. There were two trials. One was a 20-day trial, and my client was found not guilty on one of the counts, and then I think the jury hung on the other count. THE COURT And what evidence would you point us to that should have caused the district court to sue a sponte order a competency evaluation in the face of silence? Nobody brought it to his attention, either the defense or the prosecution? MS. MURPHY I guess if you have someone sitting in front of you for 20 days and they're just kind of staring into space and they're sitting and they will not talk to their counsel, they will not talk to anyone, they show no reaction to anything. THE COURT But was there any evidence that he refused to cooperate with his lawyer? I mean, many people come to court and say nothing. They let their lawyer speak for them, you know, unless the lawyer – there was no evidence that I saw on the record, and maybe I missed it, that the lawyer tried to talk to his client and the client refused. Was there any evidence of any kind? MS. MURPHY Well, the attorney at one point filed a motion to withdraw. I think he felt like he couldn't effectively represent Mr. Jamar, and he had mentioned that Mr. Jamar refused to talk to him. But again, because Mr. Jamar was acquitted, I suppose that there was in the first – in the one count and then not convicted on the other ones, I suppose that that gave a certain slack to it and that made his attorney maybe not ask for the competency hearing. But there's definitely a problem where you have a client that will not say one word to you. How are you going to plan your strategy? How do you know what witnesses to call? How do you know what happened? I mean, literally Mr. Jamar did not say one word, and this was a long trial and this was a long representation. But I guess the concern that we have, at least I have, is that you're expecting the trial judge to be almost prescient without any help whatsoever from the lawyer who's in the best position to tell him that there might be a problem, and that would be his counsel, and his counsel didn't say anything. MS. MURPHY Right. Again, I would point to a couple of things that might – that would have alerted a reasonable judge, and that was, again, just the presence of this person in the courtroom for 20 days plus a four-day retrial and just completely not talking to anyone. And then the motion to withdraw where trial counsel made it clear that Mr. Jamar had never spoken one word to him. So on that, I'll maybe leave you with those and leave you with those to think about and move on to some of the other questions. Now, the wiretap issue, I think that's a really important issue. And, again, you know, if we're going to remand for sentencing, we're looking at it in a slightly different light because there's always a possibility if Mr. Jamar is resentenced that this could almost become moot because his attorney, his trial attorney, did a really good job at sentencing and mentioned that had this been a powder cocaine case, Mr. Jamar would be facing 18 to 24 months, which he's already served, so he may not even have to do any time. So this may be a moot issue. But if the Court wants me to address it, I'd certainly like to bring to the Court's attention that the government had talked about in their brief that there was some argument about the goals of the investigation not being capable of being accomplished. And I reprinted in my brief the exchange where the district court had said that it can consider the end result and it was not in that context. It just seemed to be in the context of concerns about terrorism and so forth, and I don't think that those should be affecting our laws as to wiretap. So I wanted to bring that to the Court's attention. Well, counsel, aside from the end result remark of the judge, which he said didn't really affect him, what is your best argument that the government failed to establish necessity for the wiretap? Well, again, for me, it's not a factual question, and I don't want this Court, I'm not asking this Court to second-guess the district court judge. It's just a pure question of applying the wrong legal standard. It's a pure question of if I come in front of you and I'm asking for a wiretap, all that you're allowed to look at is the actual document. Now, you can't look at whether any evidence was actually seized and whether anyone was convicted. It doesn't matter how much. Well, I said put that aside. What other evidence do you have? Because the judge said, I'm not considering the end result. Once he said, he talked about what the end result was. Is there any other evidence that you have or you submitted indicating that it was not necessary to have the wiretap? I didn't take that angle at all, Your Honor. I would say that the judge did say at one point that I'm not considering the end result, but he did consider it, and counsel did object to that. He said, I am considering the end result. How can I ignore the end result? And I think that maybe district judges need this Court to tell them that they have to ignore the end result. That's the law. Well, maybe I misread what Judge Cherezian said, but what I understood him to be saying is, look, I'm a human being. I'm a judge. Of course I know what the results were of the wiretap, just like in a suppression motion hearing. We know what evidence it is that's going to be suppressed, but the case law still says that you apply notions of common sense in the evaluation of necessity. Now, did I misread what he said? That's how I understood the portion that you quoted in the excerpt. Well, I think one of the things that really concerned me about what the judge said was, he followed that by saying that terrorism is on the rise and this is going to keep coming up, and it seemed to me that he was saying that because laws are being broken, I can therefore look at something that I really would not normally be looking at. I took that to mean a comment on the necessity issue, that there would, of necessity, or maybe I shouldn't use that word, but because of, for example, in terrorism cases, you would expect that there would be more wiretap applications because of the difficulties of investigating those sorts of cases. Right. Maybe you and I are just looking at the same transcript and reading it differently, and if I've missed something, please help me. I suppose, you know, when you're counsel and you're arguing that in front of the district judge and you say, look, Your Honor, the law is that you cannot consider the end result, you expect the judge to say, yes, I know that's the law and I won't consider the end result, and that's not what happened. Okay. I think we understand your position. I'm going to save my remaining time for a break. You've actually used up all your time, but let's hear what Mr. Young has to say, and then I'll give you a minute in reply. Good morning, Your Honor. It's Mark Young on behalf of the United States. The first issue that was brought before the Court was whether a remand is proper in this case, and it is not under Ameline. This was a mandatory minimum sentencing case. It was not a guideline analysis. While the guidelines pointed to a 168 to 210-month sentence, under the mandatory minimum he first had a 10-year mandatory minimum sentence for his conviction, and then due to the enhancement had a resulting 20-year mandatory minimum sentence. So the judge did not have any discretion to go below the 240 months in this case, whether to depart from the guidelines or not. The judge in this case was stuck at 240 months. So therefore, contrary to Ameline and Booker and cases along that line, there's no need for any sort of remand for sentencing this matter. Now, the first issue argued by Ms. Murphy was the issue of whether the district court should have decided that there was a mental competency issue with the defendant prior to either one of his two trials. And there was no evidence on the record before the district court to make that conclusion. The standard is whether a reasonable judge in the district court's position would have doubted defendant's competency at trial. There's absolutely no evidence in this case that the district court could have relied upon in doubting defendant's competency. And I think it's important to note that when it came time to actually discuss defendant's competency, it is defendant's trial counsel who actually said he did not believe defendant was incompetent, but simply had chosen not to speak with him, had chosen not to cooperate with him. And if he wanted to, he could. Under Medina v. California, which the government sided to, the defense counsel is the person in the position of knowing whether, at least at the initial stage, screening this issue, flagging this issue for the district court. Defense counsel did not do that. And when the issue was finally flagged by the district court, it's defense counsel who pointed out that he believed defendant could communicate with him, but was simply choosing not to. So the record is barren. There is no reason to believe that Judge Trevesian should have assumed that the defendant in this case was unable to communicate and had some sort of mental competency issue. And as the court correctly pointed out, when a competency exam was finally held, defendant was found to be competent. That has not been challenged before us. That issue is not before us. But at the time of sentencing, he, in fact, was found to be competent. The next issue, to be honest, would be the wiretap issue, and that is whether the investigatory goals in this case were too broad and whether, in fact, the district court erred in relying upon the end result. And again, I believe this is an issue that was brought up by defense counsel initially. Counsel for co-defendant Samuel Green, a co-defendant in this case who had brought the initial motion, stated these goals are too broad, and I believe the court is they defy common sense that they could be challenged. And what that caused was the government to begin to argue, well, how could you say these goals defy common sense when, in fact, they were accomplished? I mean, excuse me, yeah, defy common sense. These goals were accomplished. The goals that were listed in the affidavit were, in fact, accomplished in this case. The government was able to identify the main individual source of supply. The government was able to identify the methods and means used by the main individual, the gang, the Venice Shoreline Crips, to distribute cocaine base and cocaine in the Oakwood area of Venice. The government was able to identify where the narcotics proceeds were going. They were able to seize the narcotic proceeds. The district court correctly relied upon his common sense in determining that the goals, as stated, were not overbroad. And that is really the issue. Were the goals too broad? And they were not. They were specifically tailored to this type of case, the type of drug case that was before the district court. And, in fact, they had been accomplished. Now, the final issue that had been raised by defendant in this case was the issue of the validity of his prior conviction. Now, under Title 21 of the United States Code, Section 851, it is the defendant who bears the burden by preponderance of evidence proving that the prior conviction was invalid. And defendant has not met that burden in this case. Unlike Boykin v. Alabama, in which the record was completely silent as to the rights, whether they had been waived, in this case we have a very complete record. While through an inadvertent admission the state court judge failed to ask whether the defendant waived his right to compulsory process and, I believe, confrontation, the record is clear that the defendant's final plea was knowing and intelligent because the defendant had every right explained to him. He had the opportunity to raise any questions he had about any rights. He was actually asked, do you understand everything you've been told? And his response is, yeah, he did understand. And the state court judge concluded in light of the totality of the plea that the final plea was knowing and intelligent. So in light of the fact that here we are not confronted with a silent record, we have a complete record as to the change of plea, and the fact that the defendant bears the burden of demonstrating that it is unconstitutional, this prior conviction must be upheld in this case. If the panel doesn't have any other questions, I'll come and we'll rest. I don't think so. Thank you. Thank you. Ms. Murphy, I'll give you a minute. Ms. Murphy, in that minute it might do you well to go straight to the point he made on that it was a mandatory minimum, not the guidelines that guided this sentence. Your Honor, in U.S. v. Moreno-Hernandez, which was decided by this court on July 5th, it was decided that it was correct to remand just in light, purely in light of the advisory mandatory issue. And that's very applicable in this case because the judge did not want to give him 20 years. I'm asking you, was it a mandatory minimum sentence for the crime, or was it a mandatory guideline minimum? The way I look at it, Your Honor. No, not the way you look at it. What is it? I'm sorry, I don't understand the question. Could you repeat it? Move on. Well, let me ask you this question. If the plea, the prior plea was knowing and voluntary, if we make that finding, and if Section 851 was complied with, as I understand Mr. Young's argument, the mandatory minimum statute is what drives the sentence that was imposed. We don't care what the guidelines say. The lowest that the district court can sentence with a mandatory minimum is 20 years, even if under the guidelines the sentence would be lower in the absence of the mandatory minimum, so that in essence the specific statute trumps the general. What's your response to that? I request that we would brief the issue. It's very important to me. Mr. Jamar does not deserve 20 years, and I would really like an opportunity to brief the issue for him. You've known since the 851 notice was given that you were facing a mandatory minimum sentence. So to the extent that you forgot to raise the issue or you should have briefed it, it's waived. Do you have a response to it or not? Your Honor, I respect what you're saying. I did send the court a 28-day letter, and I asked if I could further brief the issue, and I didn't get a response, and I would really like to further brief it. Do you have an answer to our question? Because it seems to be a pretty straightforward application of a specific statute that trumps the general. And, Counsel, you would have nothing to gain by a remand except an increased sentence. He was given the mandatory minimum. Your Honor, I don't believe that the judge would ever increase his sentence. The judge really did not want to give him 20 years, and I think everyone in this case was heartbroken that this kid got 20 years for it. He couldn't give less, so there would be nothing gained by a remand. Isn't that right? All right. I think we understand the position. Unless you have one final comment you want to make. I again request the court if I could further brief this issue. That request is denied. The case just argued is submitted, and the only one to hear argument is the case of United States v. Brim. The case of United States v. Avalaz is ordered submitted on the brief.
judges: Farris, D.W. Nelson, Tallman